**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| RELIANT PRO REHAB, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:16-CV-00920-M |
| | § | |
| BENJAMIN ATKINS, REMKO VAN DER | § | |
| VOORDT, and THE REHAB | § | |
| DEPARTMENT, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 7],

filed by Defendants Benjamin Atkins; Remko Van Der Voordt; the Rehab Department, LLC;

Traditions Senior Management, Inc.; and LA Management Holdings, LCC, (collectively, the

"Non-Nursing Home Defendants"), and the Motion to Dismiss Under Rule 19(b) or Transfer

Venue [ECF No. 10], filed by Defendants Botetourt Health Care, LLC; Chesapeake

Rehabilitation & Care Center, LLC; Essex Rehab & Care Center, LLC; Birdmont Health Care,

LLC; CPlace University SNF, LLC; CPlace Timberwood SNF, LLC; CPlace Springhill SNF,

LLC; CPlace Colonial RC, LLC; CPlace Forest Park SNF, LLC; CPlace Unity SNF, LLC; and

CPlace Baton Rouge SNF, LLC (collectively, the "Nursing Home Defendants").  After carefully

reviewing the motions, the Court determines that it lacks personal jurisdiction over the Non-

Nursing Home Defendants.  Rather than dismiss for lack of personal jurisdiction or failure to join

an indispensable party under Federal Rule of Civil Procedure 19(b), the Court transfers this

action to the District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1406(a).

## I.   FACTUAL BACKGROUND

The facts essential to resolving these Motions are not in dispute.  The sole plaintiff in this case, Reliant Pro Rehab, is a limited liability company with its principal place of business in Plano, Texas.  Compl. ¶ 1 [ECF No. 1]; ECF No. 14 Ex. 12 at 1.  Plaintiff's sole equity member is Reliant Rehabilitation Holdings, Inc., a Delaware corporation with its principal place of business in Texas.  Compl. ¶ 1.  The sixteen Defendants in this case can be divided into three groups: (1) the Nursing Home Defendants; (2) entities that provided management services to the Nursing Home Defendants, namely Traditions Senior Management, Inc., LA Management, Inc., and the chairman of Traditions and manager of LA Management, Benjamin Atkins; and (3) a company that provided physical therapy services to the Nursing Home Defendants, the Rehab Department, LLC, and its president, Remko van der Voordt.  ECF No. 8 at 6.

The Nursing Home Defendants consist of eleven nursing homes located in either Virginia or Louisiana.  ECF No. 10 at 4–5.  The Complaint alleges that the Nursing Home Defendants are owned by various limited liability companies, namely West Coast Commonwealth Partners, LLC, Creative Care Resources, LLC, and Careen, LLC.  Compl. ¶¶ 7–17.  The Complaint alleges that these companies are all owned by LTC Diversified California Holdings, LLC, whose equity member is an individual who resides in Florida.  *Id.* ¶ 7.

The Nursing Home Defendants are all managed from Florida.  ECF No. 10 at 13.  Traditions is incorporated in Nevada and headquartered in Clearwater, Florida.  ECF No. 7, Ex. A at 1 (Decl. of Traditions).  LA Management is a limited liability company with its principal place of business in Clearwater, Florida; all of LA Management's members are citizens of Florida or Louisiana.  ECF No. 7, Ex. B at 1 (Decl. of Benjamin Atkins on behalf of LA

Management).  Atkins resides and works in Florida.  ECF No. 7, Ex. C at 1 (Decl. of Benjamin Atkins).

The Rehab Department is a limited liability company organized under the laws of Wyoming with its principal place of business in Florida.  ECF No. 7 Ex. D at 1 (Decl. of Remko van der Voordt on behalf of the Rehab Department).  The only member of the Rehab Department is a citizen of Florida.  *Id.*  Van der Voordt, who resides and works in Florida, is the president and CEO of the Rehab Department.  *Id.*; ECF No. 7 Ex. E at 1 (Decl. of Remko van der Voordt).

In 2012, Plaintiff entered into Therapy Service Agreements (the "Agreements") with each of the Nursing Home Defendants to provide physical therapy and rehabilitation management services.  Compl. ¶¶ 21–25.  Employees of Traditions and LA Management negotiated the terms of the Agreements with Plaintiff, in Florida, on behalf of the Nursing Home Defendants.  ECF No. 7 Ex. 1 at 1.  The Agreements were signed in Florida by representatives of the Nursing Home Defendants.  ECF No. 10 at 7; ECF No. 14 Exs. 1–11.  The services under the Agreements were performed at the premises of the Nursing Home Defendants in Louisiana and Virginia.  *Id.* at 5.  Billing and accounting services associated with the services under the Agreements were rendered in Florida.  *Id.* at 7–8.

Each of the Agreements contained the following clause, hereinafter referred to as the "forum selection clause":

> Controlling Law: The laws of the State of Texas shall govern this Agreement.  Customer hereby consents to the jurisdiction of the federal and state courts of the State of Texas for purposes of any and all disputes that may arise in connection with this Agreement.

ECF No. 13 Ex. 1 ¶ 15.b; *id.* Ex. 2 ¶ 15.b; *id.* Ex. 3 ¶ 15.b; *id.* Ex. 4 ¶ 15.b; *id.* Ex. 5 ¶ 15.b; *id.* Ex. 6 ¶ 15.b; *id.* Ex. 7 ¶ 15.b; *id.* Ex. 8 ¶ 15.b; *id.* Ex. 9 ¶ 15.b; *id.* Ex. 10 ¶ 15.b; *id.* Ex. 11 ¶ 15.b.

The Agreements were amended in 2013, and again in May of 2015 (the "2015 Amendment").  ECF No. 8 at 8.  Plaintiff and Traditions, on behalf of the Nursing Home

Defendants, negotiated and signed the 2015 Amendment to the Agreements in Florida. Compl. ¶ 29; ECF No. 7 Ex. 1 at 1. The 2015 Amendment states it was made "between Reliant Pro Rehab, LLC, . . . and the Facilities, in each case listed below on Schedule B, collectively referred to herein as ('Customer')." ECF No. 14 Ex. 12 at 1. Schedule B lists the facilities bound by the terms of the 2015 Amendment and includes the eleven Nursing Home Defendants. *Id*. at 2–3. The signature page indicates that it was signed "ON BEHALF OF CUSTOMER" by Traditions and LA Management. *Id.* at 4. Atkins signed for both entities. *Id.*

At some point following the 2015 Amendment, Traditions sent notice to Plaintiff, on behalf of the Nursing Home Defendants, terminating the Agreements effective on September 30, 2015. *Id.* The Nursing Home Defendants entered into new contracts with the Rehab Department to provide physical therapy services beginning on October 1, 2015. *Id.*

## II.    PROCEDURAL BACKGROUND

On April 4, 2016, Plaintiff filed this suit against the Nursing Home and Non-Nursing Home Defendants, alleging breach of contract, quantum meruit, fraudulent inducement, fraud, and tortious interference with contractual relations. *Id.* ¶¶ 26–37. Plaintiff claims that the Defendants have breached the terms of the Agreements and owe Plaintiff money for services rendered, and that they fraudulently induced Plaintiff into making the 2015 Amendment to the Agreements. *Id.* ¶¶ 26–33. Against the Rehab Department and van der Voordt, Plaintiff also alleges claims of tortious interference with contractual relations, specifically alleging that van der Voordt performed an audit of the relationship between Plaintiff and the Nursing Home Defendants, which led to the Nursing Home Defendants' cancellation of the Agreements. *Id.* ¶¶ 34–37.

On May 16, 2016, the Non-Nursing Home Defendants moved to dismiss the claims against them for lack of personal jurisdiction [ECF No. 7].  On May 17, 2016, the Nursing Home Defendants moved to dismiss the claims against them under Rule 19(b) or, in the alternative, to transfer the case to the Tampa Division of the Middle District of Florida [ECF No. 10].

### III.    MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Non-Nursing Home Defendants move to dismiss, claiming that Plaintiff has failed to make out a prima facie showing that Texas has personal jurisdiction over each Non-Nursing Home Defendant.  Plaintiff argues that the Non-Nursing Home Defendants are subject to personal jurisdiction in Texas because they are bound by the forum selection clause contained in the Agreements executed between Plaintiff and the Nursing Home Defendants, and because the Non-Nursing Home Defendants committed torts that they knew would cause harm in Texas.  For the following reasons, the Court concludes that it lacks personal jurisdiction over the Non-Nursing Home Defendants.

When a defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of "mak[ing] a prima facie showing that personal jurisdiction is proper." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citing *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)).  The Court "must accept the plaintiff's uncontroverted allegations, and resolve in [its] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Monkton*, 768 F.3d at 431 (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)) (internal quotation marks removed). When the Court determines personal jurisdiction on affidavits and other similar written materials, without a hearing, generally the plaintiff must satisfy only a prima facie case. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

### a.  PERSONAL JURISDICTION IS RIPE FOR DETERMINATION

As a preliminary matter, Plaintiff argues that the jurisdictional issues presented and the merits of Plaintiff's claims are intertwined, and therefore the Court should refrain from making a jurisdictional determination until after trial.  ECF No. 13 at 5.  The Fifth Circuit has recognized that when "the jurisdictional issue is intertwined with the merits and therefore can be determined based on jury fact findings," it may be appropriate to deny a pretrial motion to dismiss for lack of personal jurisdiction and instead determine jurisdiction at trial.  *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008).  However, in cases applying this standard, the party asserting jurisdiction must still present a prima facie showing of personal jurisdiction, with all factual conflicts resolved in its favor, prior to proving contested jurisdictional facts at trial by a preponderance of the evidence.  *Brown v. Slenker*, 220 F.3d 411, 418–19 (Fifth Cir. 2000).  Plaintiff has not identified the particular issues that are intertwined with jurisdiction, or any contested facts that should prevent the Court from determining personal jurisdiction before trial.  Accordingly, Plaintiff must still present a prima facie case for personal jurisdiction, and the Court thus proceeds with its consideration of the Non-Nursing Home Defendants' Motion to Dismiss for lack of personal jurisdiction.

### b.  FORUM SELECTION CLAUSE

Plaintiff argues that the forum selection clause within the Agreements between Plaintiff and the Nursing Home Defendants is enforceable against the Non-Nursing Home Defendants.  Plaintiff admits that the Non-Nursing Home Defendants are not signatories to the Agreements,[1] but argues that Traditions, LA Management, and Atkins are "inextricably intertwined" with the

---

[1] ECF No. 13 at 2.  Although Traditions and LA Management signed the 2015 Amendment, the signature page clearly indicates that they signed in a representative capacity on behalf of the collective "Customer," defined earlier in the Amendment to include the Nursing Home Defendants.  ECF No. 14 Ex. 12 at 1–4.

Agreements so as to be bound by the forum selection clause contained within them.  With regards to the Rehab Department and van der Voordt, Plaintiff argues that these Defendants "must or should have known that [the Agreements] had a Texas forum[]selection clause."  ECF No. 13 at 4.

A litigant may consent to personal jurisdiction through a forum selection clause contained in a contract, so long as the contract has been freely negotiated and is not unreasonable and unjust.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–05 (1982) ("Because the defense of personal jurisdiction is a personal right, it may be waived by consent . . . .").  "Ordinary principles of contract and agency law may be called upon to bind a non-signatory to an agreement whose terms have not clearly done so."  *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 (5th Cir. 2003).  In a line of cases considering the enforceability of a contractual arbitration clause to a non-signatory, the Fifth Circuit has recognized six theories for binding a non-signatory: (a) incorporation by references; (b) assumption; (c) agency; (d) veil-piercing / alter ago; (e) estoppel; and (f) third party beneficiary theory.  *Id.*  The Fifth Circuit has subsequently applied the line of cases invoking these theories to a contract's forum selection clause.  *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 517 (5th Cir. 2006) (holding that a non-signatory to a contract was bound by the contract's forum selection clause based on estoppel); *Compana LLC v. Mondial Assistance SAS*, No. 3:07-cv-1293, 2008 WL 190522, at *3 (N.D. Tex. Jan. 23, 2008).

If the forum selection clause in the Agreements applies to the Non-Nursing Home Defendant applies, this Court has personal jurisdiction by consent; the clause expressly provides

for "consent[] to the jurisdiction of the federal and state court of the State of Texas" to resolve disputes associated with the Agreements.  *E.g.*, ECF No. 13 Ex. 1 ¶ 15.b.

However, the Plaintiff has failed to show that the forum selection clause applies to the Non-Nursing Home Defendants.  Further, with regard to the Rehab Department and van der Voordt, Plaintiff has asserted only that these Defendants knew of the forum selection clause. The Court finds the argument that they are bound by it unpersuasive.  Knowledge of a forum selection clause is not one of the theories found by the Fifth Circuit as a basis to bind a non-signatory to a contract, and Plaintiff cites no case law to support binding a non-signatory to a contract based upon mere knowledge of a clause contained within that contract.  Plaintiff has argued no other basis for using the forum selection clause to confer personal jurisdiction over the Rehab Department and van der Voordt, and accordingly, the Court finds that the forum selection clause does not apply to these two Defendants.

Plaintiff claims that a non-signatory may be bound to a forum selection clause "if it is closely related to or inextricably intertwined with the transaction," and that, in this case, Traditions, LA Management, and Atkins are "inextricably intertwined" with the Agreements and thus are bound on what is apparently an estoppel theory.  ECF No. 13 at 2.

The Fifth Circuit recognizes two theories of estoppel to bind a nonparty to a contract's forum selection clause.  *Compana*, 2008 WL 190522, at *4.  The first of these, on which Plaintiff seemingly relies, is called an "intertwined claims theory" of equitable estoppel.  *Bridas*, 345 F.3d at 360–61.  This theory can be used to enforce a contract provision, such as a forum selection or arbitration clause, against a signatory when the claims are "so intertwined with and dependent on the [contract] that the . . . agreement within the [contract] should be given effect."  *Grigson v. Creative Arts Agency L.L.C.*, 210 F.3d 524, 528–29 (5th Cir. 2000) (internal quotation marks

omitted).  However, the intertwined claims theory of estoppel applies only to prevent a *signatory* from avoiding the forum selection clause when a *non-signatory* brings claims that are intertwined with the agreement the signatory has signed.  *Bridas*, 345 F.3d at 361.  Here, Plaintiff, a signatory to the Agreements with the Nursing Home Defendants, is attempting to enforce the forum selection clause against Traditions, LA Management, and Atkins, non-signatories, and accordingly, the intertwined claims theory of estoppel does not apply.

The second theory of estoppel recognized by the Fifth Circuit is "direct benefits" or "direct benefit" estoppel, which permits a signatory to a contract to enforce a contract provision against a non-signatory.  *Compana*, 2008 WL 190522, at *4.  "Direct benefits estoppel applies when a non-signatory 'knowingly exploits the agreement containing the arbitration clause.'" *Bridas*, 345 F.3d at 361–62 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001)).  Direct benefits estoppel has been used by the Fifth Circuit to bind a non-signatory to a contract's forum selection clause.  *Hellenic*, 464 F.3d at 520.  "Direct-benefit estoppel 'involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause.'" *Id.* at 517–18 (quoting *DuPont*, 269 F.3d at 200).  "A non-signatory can 'embrace' a contract . . . in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010).

Here, the Non-Nursing Home Defendants do not assert claims premised upon the Agreements; to invoke direct benefits estoppel, therefore, Plaintiff has the burden to show that the non-signatories to the Agreements—Traditions, LA Management, and Atkins—knowingly

sought and obtained direct benefits from Plaintiff's Agreements with the Nursing Home Defendants.

Plaintiff has neither argued that this form of estoppel applies, nor provided an indication of any direct benefit that Traditions, LA Management, and Atkins received under the Agreements.  To bind the non-signatories to the forum selection clause contained in the Agreements, Plaintiff must demonstrate some real and substantial benefit that these parties received under the Agreements.  *See, e.g.*, *Hellenic*, 464 F.3d at 518–19 (finding that a non-signatory ship purchaser benefited from a contract between a ship classification society and the ship's seller, because the contract provided for a classification that the ship could operate in commerce); *Quality Custom Rail & Metal, LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 3:13-cv-3587, 2014 WL 840046, at *3 (N.D. Tex. Mar. 4, 2014) (finding a non-signatory to a surety bond bound by the forum selection clause contained therein, where the bond served as an inducement upon which the non-signatory relied to begin work on a construction project); *Bancroft Life & Cas., Ltd. v. FFD Res. II, LLC*, 884 F. Supp. 2d 535, 549–50 (S.D. Tex. 2012) (finding that direct benefits estoppel applied when a non-signatory to an insurance policy sought and obtained insurance coverage under the policy); *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 365–73 (S.D. Tex. 2006) (citing cases).  Because Plaintiff has not identified any such direct benefits received, the Court finds that direct benefits estoppel does not apply to this case.

The Court finds that Plaintiff has not carried its burden to show that the forum selection clause supports suit against the Non-Nursing Home Defendants in this forum.

### c.  MINIMUM CONTACTS

Plaintiff also maintains that there is nevertheless jurisdiction over the Non-Nursing Home Defendants, because they purposefully directed activities towards Texas, and the current

litigation stems from those activities.  A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution.  *Id.*  Because "[t]he Texas long-arm statute extends to the limits of the Constitution," only the second prong of the test is at issue.  *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).

There are two categories of personal jurisdiction, general and specific.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).  General jurisdiction exists when a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  The Supreme Court cautions against "exorbitant exercises of all-purpose jurisdiction."  *Daimler*, 134 S. Ct. at 754; *see also New World Int'l, Inc. v. Ford Global Techs.*, No. 3:15-cv-1121, 2016 WL 1059608, at *2 (N.D. Tex. Mar. 16, 2016) ("*Daimler* makes clear that, in all but exceptional circumstances, [a defendant] is only subject to general jurisdiction where it is incorporated and headquartered.").  For a court to exercise specific jurisdiction over a nonresident who has not consented to suit, the nonresident must have contacts with the forum state that "arise from or are directly related to the cause of action."  *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).  Minimum contacts must be met as to each defendant.  *See Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980).  The

"purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'"  *Id.* at 475 (citations omitted).  A plaintiff must establish a substantial connection between the nonresident defendant and the forum state.  *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987).

A court must consider all factors when making the purposeful availment inquiry: "no single factor, particularly the number of contacts, is determinative."  *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state."  *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); *see also Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 884 (5th Cir. 1993). If the plaintiff successfully shows that the defendants contesting personal jurisdiction have minimum contacts with Texas that relate to plaintiff's claims, the burden then shifts to the defendants to show that exercising jurisdiction would be unfair or unreasonable.  *Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006).  In considering whether exercising jurisdiction would offend "traditional notions of fair play and substantial justice," the court examines (1) the burden on the defendants contesting jurisdiction; (2) Texas's interests; (3) the plaintiff's interest in obtaining convenient, effective relief; (4) the judiciary's interest in efficiently resolving controversies; and (5) Texas's interest in furthering important social policies.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

### i.  TRADITIONS, LA MANAGEMENT, AND ATKINS

Plaintiff alleges that the Non-Nursing Home Defendants committed torts that were directed towards Texas, and the current litigation stems from those activities.  Specifically, Plaintiff maintains that Traditions, LA Management, and Atkins fraudulently induced Plaintiff into entering into the 2015 Amendment.  Because the 2015 Amendment states that Plaintiff's principal place of business is in Texas, Plaintiff argues, it was foreseeable to these Defendants that a tort injury in Texas could result from their allegedly tortious conduct associated with the 2015 Amendment.

With respect to personal jurisdiction, the first issue for analysis is whether Defendants' contacts with Texas allow the Court to exercise personal jurisdiction over them.  "When a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of actions arising from its offenses or quasi-offenses." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999).  Furthermore, "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.*  However, "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *McFadin v. Gerber*, 587 F.3d 753, 762 (5th Cir. 2009) (quoting *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (internal quotation marks omitted)).

Plaintiff maintains that Traditions, LA Management, and Atkins fraudulently induced Plaintiff, a Texas resident, to enter into the 2015 Amendment, and that an injury in Texas was a foreseeable, logical, and natural result.  The Court is unconvinced that these actions alone suffice to subject these Defendants to personal jurisdiction in Texas.  Traditions, LA Management, and Atkins' actions of negotiating the 2015 Amendment on behalf of the Nursing Home Defendants do not appear to have been directed towards Texas in any manner.  Plaintiff has alleged no facts or indication that any fraud associated with the adoption of the 2015 Amendment was specifically directed towards Texas or concerned assets and activities in Texas, or statements and misrepresentations made in Texas.  None of the meetings, negotiations, or drafting associated with the 2015 Amendment took place in Texas.  It contains no reference to Texas other than the recitation of Plaintiff's address in Plano, Texas.[2]  The 2015 Amendment concerns Plaintiff's Agreements with the Nursing Home Defendants, all of which are nursing homes located outside of Texas.  The services to be performed under the Agreements and the subsequent amendment were to take place outside of Texas at the premises of the Nursing Home Defendants.

In the record before the Court, the only connection between Texas and this case is that Plaintiff is a Texas company.  The fact that it may have been foreseeable to Traditions, LA Management, and Atkins that financial injury to Plaintiff in Texas could result from their actions associated with the 2015 Amendment is insufficient to establish the minimum contacts necessary for specific jurisdiction.  *McFadin*, 587 F.3d at 762.  Because the Plaintiff provides no other grounds for exercising personal jurisdiction over Traditions, LA Management, and Atkins, the

---

[2] Plaintiff does not allege that Traditions, LA Management, and Atkins are subject to personal jurisdiction in Texas because they facilitated the 2015 Amendment.  Even if it had, the law is clear that a defendant does not establish minimum contacts with a forum merely by entering into a contract with a resident of a forum state.  *McFadin*, 587 F.3d at 760.

Court concludes that Plaintiff has not carried its burden for making a prima facie case that personal jurisdiction over these three Defendants is proper.

## ii.  THE REHAB DEPARTMENT AND VAN DER VOORDT

With regards to the other two Non-Nursing Home Defendants, Plaintiff argues that the Rehab Department and van der Voordt intentionally interfered with the Agreements, and through that interference they "must or should have known that Plaintiff's principal place of business was in Texas because they were retained to audit Plaintiff's compliance with the contracts at issue in the lawsuit." ECF No. 13 at 5.  To succeed on a claim for tortious interference with a contract, a plaintiff must show that it had a valid contract with which the defendant intentionally interfered, and that the interference proximately caused actual damage or loss. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).  Here, Plaintiff claims that van der Voordt and the Rehab Department tortiously interfered with the Agreements between Plaintiff and the Nursing Home Defendants by conducting an audit, allegedly without Plaintiff's permission or involvement, which led to the cancellation of the Agreements between Plaintiff and the Nursing Home Defendants.  Compl. ¶¶ 34–37.

Even taking these allegations as true, the Court finds these activities insufficient to establish minimum contacts with Texas.  Plaintiff claims only that the Rehab Department and van der Voordt knew that Plaintiff's principal place of business is in Texas.  Plaintiff does not claim that the alleged interference—the audit—happened in Texas, or that van der Voordt or the Rehab Department directed their activities towards Texas specifically.  Nor are there any claims that van der Voordt or any other representative of the Rehab Department traveled to Texas, obtained materials from Texas, or even contacted individuals in Texas to facilitate the audit.  On

the contrary, the Complaint indicates that the alleged tortious conduct took place in Florida.[3]

Although the effects of the tortious interference may have spread to Texas through financial

injury to Plaintiff, "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction."

*McFadin*, 587 F.3d at 762.  "Accordingly, a court does not have specific personal jurisdiction

over a defendant alleged to have tortiously interfered with a contract, where that interference

happened outside of the forum state."  *Fairchild v. Barot*, 946 F. Supp. 2d 573, 581 (N.D. Tex.

2013) (Lynn, J.).  Here, Plaintiff has failed to plead that the acts comprising tortious interference

occurred in, or were directed at, Texas.  Thus, even assuming the truth of the allegations,

Plaintiff has not established minimum contacts or pled a prima facie case for asserting personal

jurisdiction over the Rehab Department or van der Voordt.

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over the

Non-Nursing Home Defendants.  However, rather than dismiss the claims against the

Non-Nursing Home Defendants, the Court transfers this action to the Middle District of Florida

for the reasons discussed below.  The Motion to Dismiss for want of personal jurisdiction is

therefore **DENIED.**

### IV.    MOTION TO DISMISS UNDER RULE 19(b) OR, IN THE ALTERNATIVE, TO TRANSFER

The Nursing Home Defendants seek to dismiss the claims pending against them for

failure to join an indispensable party under Federal Rule of Civil Procedure 19(b) or, in the

alternative, to transfer the case to the Middle District of Florida.  Plaintiff argues that the Nursing

Home Defendants' Motion to Dismiss under Rule 19(b) is premature, and that the Nursing Home

Defendants are bound by the forum selection clause contained in the Agreements and have not

---

[3] "When Plaintiff's audit team arrived in Florida for the joint audit, Defendants informed Plaintiff that (a) Remko van der Voordt had conducted a unilateral audit, (b) the joint audit had been canceled, and (c) they were terminating their contracts with Plaintiff."  Compl. ¶ 35.

met their burden for proving a venue transfer.  For the reasons explained below, the Court grants

the Nursing Home Defendants' alternative Motion to Transfer Venue and denies the Nursing

Home Defendants' Motion to Dismiss pursuant to Rule 19(b).

### a.  VENUE

### i.  LEGAL STANDARD

The general federal venue statute provides:

> (b) A civil action may be brought in—
>> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

A defendant that is an entity with the capacity to sue and be sued in its common name

under applicable law, whether incorporated or not, shall be deemed to reside in any judicial

district in which such defendant is subject to the court's personal jurisdiction with respect to the

civil action in question.  *Id.* § 1391(c)(2).

When a case is filed in an improper venue it should be dismissed unless it is in the

interests of justice to transfer the case to another proper venue.  *Id.* § 1406(a).  The Fifth Circuit

has recognized that § 1406 allows a transfer of venue "where the first forum chosen is improper

due to the existence of some obstacle to adjudication on the merits," including the lack of

personal jurisdiction.  *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013).  Upon a

finding that it lacks personal jurisdiction, a district court can correctly cite § 1406(a) for the

authority to transfer a case if it is in the interest of justice.  *Id.*  "The language of § 1406(a) is

amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have

been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Courts "generally prefer transfer to dismissal." *Wolf Network, LLC v. AML Diagnostics, Inc.*, No. 3-15-cv-3797, 2016 WL 1357742, at *3 (N.D. Tex. Apr. 5, 2016). Once venue is challenged under § 1406 by a defendant, the burden is on the plaintiff to prove that venue is proper in the judicial district in which the action was brought. *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 558 (N.D. Tex. 2003).

If venue is proper, the court may also, "[f]or the convenience of the parties and witnesses" and in "the interest of justice," transfer the case to any district in which the case could have been brought under 28 U.S.C. § 1391. 28 U.S.C. § 1404(a). In deciding whether to transfer under § 1404(a), the Court has "broad discretion[.]" *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). However, the Fifth Circuit requires courts to consider a variety of private and public interest factors in making the transfer decision. *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004); *see also City of Clinton, Ark. v. Pilgrim's Pride Corp.*, No. 4:09–CV–386, 2009 WL 4884430, at *2 (N.D. Tex. Dec. 17, 2009). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* Fifth

Circuit precedent clarifies that the plaintiff's choice of venue is not a distinct factor in the

§ 1404(a) analysis, but "when the transferee venue is not clearly more convenient than the venue

chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at

314–15.

A mandatory forum selection clause requires that all litigation be conducted in a specified

forum. *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 219 (5th Cir. 2009).

To be considered mandatory, the clause "must go beyond establishing that a particular forum

will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction

exclusive." *Id.* In contrast, a permissive forum selection clause, often described as a "consent to

jurisdiction" clause, authorizes venue in a designated forum but does not prohibit litigation

elsewhere. Wright, Miller, & Cooper, *Federal Practice and Procedure* § 3803.1, at 123–28 (3d

ed. 2007); *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 828 (N.D. Tex. 2013); *Von

Graffenreid v. Craig*, 246 F. Supp. 2d 553, 561 (N.D. Tex. 2003). Whether venue is "wrong" or

"improper" depends exclusively on whether the court in which the case was brought satisfies the

requirements of federal venue laws, irrespective of any forum selection clause that may apply in

the case. *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court*, 134 S. Ct. 568, 578 (2013).

### ii.  THE NORTHERN DISTRICT OF TEXAS IS AN IMPROPER VENUE

The Nursing Home Defendants challenge venue in the Northern District of Texas as

improper because none of the Defendants are residents of Texas and Plaintiff's Texas residence

is insufficient to establish proper venue. Plaintiff maintains that this district is a proper venue

under § 1391(b)(2) because "Plaintiff's principal place of business is here" and "a substantial

part of the events and omissions giving rise to Plaintiff's claims occurred in this district and

division." Compl. ¶ 20; ECF No. 15 at 3. Further, Plaintiff argues that the Nursing Home

Defendants are subject to the forum selection clause in the Agreements, which provides consents to the jurisdiction of federal courts in Texas. ECF No. 15 at 1. For the following reasons, the Court determines that venue is not proper in the Northern District of Texas.

Plaintiff's reliance on the Agreements' forum selection clause is misplaced. As discussed, the forum selection clause only applies to the Nursing Home Defendants, and is not binding on the Non-Nursing Home Defendants. Furthermore, the clause does not clearly demonstrate the parties' agreement that jurisdiction in Texas is exclusive. *Cf. UNC Lear Servs.*, 581 F.3d at 219. Rather, the clause is permissive and provides that each Nursing Home Defendant "consents to the jurisdiction of the federal and state courts of the State of Texas." ECF No. 13 Ex. 1 ¶ 15.b. This clause merely authorizes suit against the Nursing Home Defendants in Texas, but does not prohibit the suit being litigated elsewhere. Furthermore, whether or not venue is proper in the Northern District of Texas depends entirely on whether the requirements of § 1391(b) are satisfied, and not the forum selection clause. *Atl. Marine Const. Co.*, 134 S. Ct. at 578. The Court recognizes that venue under § 1391(b)(3) can be proper in any district in which any defendant is subject to the court's personal jurisdiction. However, § 1391(b)(3) applies only if there is no district for which venue is proper under § 1391(b)(1) and (2). As will be discussed further below, the Court has determined that the Northern, Middle, and Southern Districts of Florida are proper venues under § 1391(b)(1) and (2), and accordingly the fact that this Court has personal jurisdiction over some Defendants is irrelevant for determining proper venue.

Plaintiff maintains that the Northern District of Texas is a proper venue because a substantial part of the events giving rise to the claim occurred here; specifically, that Plaintiff's principal place of business is located in this district. Generally, a plaintiff's residence is an

irrelevant consideration in determining proper venue.  *See* 28 U.S.C. § 1391(b).  Plaintiff has

provided no authority for its conclusion that Plaintiff's principal place of business qualifies as a

place where a "substantial part of the events" giving rise to the claim occurred.  Furthermore,

Plaintiff has not identified any event or omission associated with the cause of action that took

place in the Northern District of Texas, other than Plaintiff's claim, without any support, that its

principal place of business is here.[4]

      The Court gives Plaintiff's choice of forum little weight in its analysis.  Plaintiff has

failed to identify any meaningful connection between this litigation and the Northern District of

Texas.  The Agreements forming the basis of this litigation were not drafted or signed here, and

the alleged tortious interference and fraudulent inducement associated with the 2015 Amendment

did not take place here, but in Florida.  The services contracted for in the Agreements took place

outside of Texas, and accordingly, so did any breach in providing those services.  None of the

Defendants reside in this district, let alone this state.  Plaintiff has identified no relevant

witnesses in this district, nor any other reason for the Court to conclude that venue in the

Northern District of Texas is appropriate.  Accordingly, this is an improper venue.

### iii.  TRANSFER OF VENUE

      The Court lacks personal jurisdiction over the Non-Nursing Home Defendants, and venue

is improper in the Northern District of Texas.  All that remains is to determine whether the Court

should dismiss or transfer the action.  Defendants argue that, in the interests of justice, the case

---

[4] The civil cover sheet that Plaintiff filed in this law suit identified Plaintiff's county of residence as Collin County, which is located in the Eastern District of Texas.  However, in its Response to the Nursing Home Defendants' Motion to Dismiss, Plaintiff claims that its "principal place of business is here and this forum has a public interest in adjudicating a dispute involving one of its corporate citizens."  ECF No. 15 at 3.  Plaintiff provides no evidence that its principal place of business is in the Northern District of Texas.

should be transferred to the Middle District of Florida.  Plaintiff contends that Defendants have not met their burden to show that a venue transfer is warranted.

Transfer is generally preferable to dismissal, and the factors in this case weigh heavily toward transfer. *Wolf Network*, 2016 WL 1357742, at *3.  When venue is improper, a court may, in the interest of justice, transfer the case to "any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Under the general venue statute, venue is proper in a judicial district in which any of the sixteen Defendants resides if the Defendants are all residents of the state in which that district is located, or a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. *Id.* § 1391(b)(1)–(2).

Venue is proper in any district in Florida.  The Non-Nursing Home Defendants are all residents of Florida.  The record before the Court indicates that the Nursing Home Defendants all have sufficient contacts with Florida so as to establish personal jurisdiction.  Specifically, the Nursing Home Defendants are all managed from Florida by Traditions or LA Management, representatives of the Nursing Home Defendants traveled to Florida to enter into contracts negotiated by Traditions and LA Management on the Nursing Home Defendants' behalf, and billing and accounting services for the Nursing Home Defendants under the Agreements were rendered in Florida.  Furthermore, the Nursing Home Defendants consent to personal jurisdiction in Florida.  ECF No. 10 at 12.  The Nursing Home Defendants are accordingly subject to personal jurisdiction in Florida, and are thus deemed residents of Florida under § 1391(c)(2).  The record before the Court also indicates that a substantial part of the events giving rise to the claim occurred in the Florida; specifically, the negotiations, drafting, and signing of the Agreements and the 2015 Amendment all took place at Traditions' headquarters in Clearwater, Florida, which is located in the Middle District of Florida.  The Nursing Home Defendants have

requested transfer to the Tampa Division of the Middle District of Florida.  ECF No. 10 at 1.

The Tampa Division includes Pinellas County, the county in which the Non-Nursing Home

Defendants reside.  Transferring the case to that division will permit the case to be tried once,

with all Defendants present, and accordingly the Court finds that it is in the interests of justice to

transfer the case as requested.

### V.    CONCLUSION

Based on the foregoing, although the Court determines that it lacks personal jurisdiction

over the Non-Nursing Home Defendants, rather than to dismiss the case for lack of personal

jurisdiction or failure to join an indispensable party under Federal Rule of Civil Procedure 19(b),

the Court hereby transfers this action to the District Court for the Middle District of Florida,

pursuant to 28 U.S.C. § 1406(a).  All other relief not specifically granted is **DENIED**.  The Court

**ORDERS** that this case be transferred to the United States District Court for the Middle District

of Florida, Tampa Division.

**SO ORDERED.**

November 28, 2016.

**BARBARA M. G. LYNN**
**CHIEF JUDGE**